[No. 19287.   Department One. — December 21, 1893.]

THE COUNTY OF SAN LUIS OBISPO, RESPONDENT,
*v.* B. F. PETTIT ET AL., APPELLANTS.

COUNTY TREASURER—RECEIPT TO AUDITOR—LICENSE TAXES—SWORN STATE-
MENT—ESTOPPEL.—Where a county treasurer, in compliance with the
requirements of section 80 of the County Government Act, made entries
in his books charging himself, as treasurer, with a certain sum of money
as having been received from a license tax collector on account of license
taxes, and delivered a receipt to the auditor showing that he had re-
ceived the money from the collector, and on the first Monday of each
month thereafter during his term made his sworn statement to the
auditor that this amount of money was in his hands, as county treas-
urer, he is estopped from questioning his receipt, and will not be per-
mitted to exonerate himself from liability to the county by showing that
the sworn statements were false, and that instead of requiring the col-
lector to pay the money into the treasury, he had taken his individual
promise to pay it at a subsequent date; and he and his sureties are liable
to the county for the loss of the money.

APPEAL from a judgment of the Superior Court of
San Luis Obispo County.

The facts are stated in the opinion of the court.

*Wilcoxon & Bouldin,* and *McD. R. Venable,* for Appellants.

*District Attorney F. A. Dorn,* for Respondent.

HARRISON, J.—The defendant, Pettit, was elected treasurer of the county of San Luis Obispo at the general election in 1890, for the term of two years, and held his office until January, 1893.   June 2, 1891, the other defendants became sureties on his official bond for the faithful performance by him of all his official duties. The present action was brought to recover the sum of $2,316.19, which it is alleged had been misappropriated or lost by Pettit while it was in his possession as such treasurer.   Judgment was rendered in favor of the plaintiff, and the defendants have appealed.   The facts upon which the judgment was given are as follows:  One Madison Graves was a license tax collector for the county, and by virtue of a county ordinance imposing license taxes collected various sums of money for the county which it was his duty to pay into the county treasury. On the 1st of August, 1892, Graves made a settlement with the county auditor for the license taxes that had been collected by him, and such settlement showed that he had at that time in his possession $2,927.21 of license tax money collected by him and belonging to the county, and the county auditor issued to him a certificate showing that he had made such settlement, and that the above amount was due to the county.   Graves delivered this certificate to Pettit on or about the 30th of September, 1892, and on the 4th of October Pettit, as county treasurer, delivered to the auditor of the county a receipt showing that he had received from Graves this sum of money.   Thereupon the auditor made entries in his books charging Pettit with the amount mentioned in the receipt, and crediting Graves with the same amount, and entries were afterwards made by Pettit in the county treasurer's books, charging himself as treasurer with said sum, as having been received from

Graves by him on account of license taxes. On the 1st of December, 1892, when the official count of the money in the treasury was made, there was a shortage of $2,316.19 in the moneys which should have been in the treasury, and when Pettit, at the expiration of his term, handed over to his successor the moneys in the treasury there still remained this deficiency according to his books.

It is alleged by the sureties in their answer as a defense to the action that, at the time when the receipt was given to the auditor, Graves did not in fact pay over the money therein named, except about $400, and that he has never paid any other portion thereof; and, in support of this averment, evidence was offered at the trial that at the time the receipt was given to the auditor Pettit had not received any of the money therein named, but that he delivered the receipt at the request of Graves, and upon his agreement that he would subsequently give him a check for the amount; that he did afterwards receive from Graves his check upon a local bank for the sum of $2,500, which he still held, for the reason that Graves had stopped its payment. Pettit made entries in his books in the early part of October, to the effect that he had received this amount of money, and on the first of each month thereafter during his term made his sworn statement to the auditor, as required by law, that this amount of money was in his hands as treasurer of the county. Upon these facts it is contended by the sureties that, as Pettit did not receive the money from Graves, they are not liable upon his bond, and that Graves, and not Pettit, is indebted to the county for the amount of the check. Graves, however, testifies positively that he paid this entire sum of money to Pettit as county treasurer prior to October 4, 1892. But, assuming that the facts were as claimed by the appellants, we are of the opinion that they do not constitute a defense to the action.

Section 115 of the County Government Act (Stats. 1891, p. 323), requires the county auditor to settle the

accounts of all persons holding moneys payable into the county treasury, and to certify the amount to the treasurer, and provides that upon the presentation and filing of the treasurer's receipt therefor he shall give to such persons a discharge, and charge the treasurer with the amount received by him. In *Butte Co.* v. *Morgan,* 76 Cal. 1, it was held that "the auditor is not required to go to the treasurer and ask him whether the amount has been actually paid, or, in other words, whether the receipt states the truth. He is authorized to accept the receipt as sufficient evidence of the fact of payment." This case presents many points similar to the present one, and must be regarded as controlling.

Section 80 of the County Government Act requires the treasurer to settle his accounts with the auditor on the first Monday of each month, and, for the purpose of making such settlement, to make a statement under oath of the amount of money received prior to the period of such settlement, the sources whence the same was derived, and the amount remaining on hand. These settlements and statements were made by Pettit, and he ought not now to be permitted to exonerate himself from liability to the county by showing that these statements were false, and that, instead of requiring Graves to pay this money into the treasury, he had taken his individual promise to pay it at a subsequent date. By delivering to the auditor his receipt for the moneys which Graves had collected, he had authorized the auditor to enter upon his books a discharge of Graves' liability, and is thereby estopped from questioning the correctness of his receipt. If he chose to permit Graves to retain this money upon his promise to subsequently pay it to him, to that extent he failed to perform his official duty in requiring the money to be paid into the treasury, and must be regarded as having himself, rather than the county, become the creditor of Graves. If any loss occurred by reason of Graves' subsequent failure to pay his check, it should be borne by Pettit, rather than by the county, since the loss had been made pos-

sible by reason of Pettit's violation of his official duty; and his sureties are liable to the county equally with him for such misappropriation or loss of the money.

Whatever defect there was in the complaint by reason of its uncertainty was cured by the answer of the defendants, in which they allege that the amount of money for which this receipt was given, and which they allege was not paid, is the same money as that which is claimed in the action.

The judgment is affirmed.

GAROUTTE, J., and PATERSON, J., concurred.