BROWN *v.* BOYNTON.

LIBEL—CHARGES NOT DEFAMATORY.
    A published letter charging that plaintiff got up a raffle for
    the benefit of the writer without his consent; appointed a
    committee of a fraternal organization to manage it; said he
    had received no money from it; that some of the members of
    the organization had purchased tickets; that the intended
    beneficiary received nothing from it; and that the facts were
    published so that the members might get their money back,—
    is not libelous, as charging or imputing that plaintiff was
    guilty of falsehood, deceit, fraud, or misconduct as a member
    of said organization, or that he had obtained money by false
    pretenses, and had embezzled or misappropriated it. HOOKER
    and MONTGOMERY, JJ., dissenting.

Error to Wayne; Hosmer, J. Submitted October 25,
1899. Decided December 12, 1899.

Case by Samuel J. Brown against Nathan S. Boynton
and Albert Gladman for libel. From a judgment for de-
fendant Boynton on demurrer to the declaration, plaintiff
brings error. Affirmed.

This was an action of libel for publishing the following
letter in a newspaper called the "Michigan Maccabee:"

"A LETTER FROM ALBERT GLADMAN.
                                "DETROIT, May 30, 1897.
    "EDITOR OF THE MICHIGAN MACCABEE: I notice in the
Michigan Maccabee, May 20, an article copied from a De-
troit paper called 'This Week,' dated May 1. I will state
the facts of the case just as they are. 'This Week,' the
Detroit paper, will retract its former statement, and pub-
lish the facts in the case from my side. The distress and
misfortune part is too true; also, the raffle came off as
planned. But the raffle scheme was got up by Sir Knight
Brown against my wishes, and was done when I was
home with my sick family, and did not know it till after
Brown had appointed his own committee and had the

tickets printed.  Grand River Tent, 409, the tent to which I have belonged for nearly four years, voted against the scheme, for which I am very thankful.  Grand River Tent, 409, helped me and my family out kindly and nobly, and carried my assessment No. 70, and voted and loaned me money, and the tent sympathizes with me and mine.  Now, the lot is not a city lot, but a lot away out in Romulus.  The raffle came off, but 'This Week' states that I am in possession once more of home, which is not correct.  I have not received one cent from the raffle, and the mortgage is in the hands of the collector to foreclose, and take my home from me.  The man who holds the mortgage told Brown and Henderson to settle, or not bother him any more, and they told him that they had got no money.  I wish, in justice to Grand River Tent, myself and family, that you would kindly state these facts about this scheme, so that the tents and sir knights who bought tickets will get their money back.

"Yours fraternally,<br>
"Albert Gladman,<br>
"Grand River Tent, 409."

The declaration contains two counts, but the innuendo to the second count is a sufficient statement for plaintiff's claim, and is as follows:

"Thereby meaning and intending to charge that the plaintiff had, without the knowledge or consent of said Albert Gladman, got up a raffle and sold tickets and obtained money for the alleged benefit of said Albert Gladman, and that the said Albert Gladman did not receive one cent of said money, and that the plaintiff and Henderson had obtained money as the proceeds of said raffle by false pretenses and representations, and embezzled said money; thereby imputing to the plaintiff the commission of the crime of obtaining money by false pretenses and representations, and also the crime of embezzlement, and charging and imputing to the plaintiff falsehood, deceit, fraud, and misconduct as a member of said Grand River Tent, 409, and obtaining money of members of said tent and other kindred tents, and of the individual members of said tent and other kindred tents, by falsehood, deceit, and fraud, and by false pretenses and representations, and with having misappropriated said money."

To this declaration defendant Boynton interposed a demurrer for the following reasons:

" 1. Said declaration nowhere states that the article mentioned therein as having been published in 'This Week' was true, or that the matter contained in the article published in that paper and the statements made therein were correct.

"2. · The construction put upon the article published in 'The Michigan Maccabee' by said plaintiff is neither a legal nor a natural construction.

"3. The language contained in the article charged in said declaration to have been published in 'The Michigan Maccabee' does not bear out the construction put upon it by said plaintiff in said declaration.

"4. The article alleged in said declaration to have been published in 'The Michigan Maccabee' is not libelous, and it does not bear the construction put upon it by said plaintiff in his innuendoes in said declaration.

"5. Neither count in said declaration states a legal cause of action against said defendant Nathan S. Boynton."

The demurrer was sustained.

*Lehman Bros.* and *F. J. Riggs*, for appellant.

*Durand & Carton*, for appellee.

GRANT, C. J. (*after stating the facts*). A libel is a malicious publication, tending to expose a person to contempt, ridicule, hatred, or degradation of character. *Barr* v. *Moore*, 87 Pa. St. 390 (30 Am. Rep. 367), and authorities cited. "Words are to be understood in their plain and natural import, according to the ideas they are calculated to convey to those to whom they are addressed." 13 Am. & Eng. Enc. Law, 378. Or, as Lord Ellenborough stated in *Roberts* v. *Camden*, 9 East, 93, 96, "words are now construed by courts, as they always ought to have been, in the plain and popular sense in which the rest of the world naturally understand them." *Wieman* v. *Mabee*, 45 Mich. 484 (40 Am. Rep. 477); *Brettun* v. *Anthony*, 103 Mass. 37. What the article referred to in the communication as having appeared in This Week was, does not appear. It is not given. It is certainly not defamatory to say that that paper "will

retract its former statement, and publish the facts in the case from my side." Neither is it defamatory to say that plaintiff got up the raffle without the consent of the defendant Gladman, or that the defendant Gladman was opposed to it. To oppose it would be very creditable. There is no defamation in the statement that the defendant Gladman had received nothing from the result of the raffle, or that the mortgage was still in the hands of the collector to foreclose. The letter does not charge that plaintiff had received any of the money resulting from the raffle, or that he had anything to do with the matter any further than to appoint a committee. The article cannot be fairly construed into charging plaintiff with having received the money, and a refusal to pay it over. Fairly construed, it means no more than that plaintiff got up a raffle without the consent of defendant Gladman; that he appointed a committee to take charge of it; that defendant Gladman has received nothing from it; that plaintiff said he had received no money from it; that some members purchased tickets (but does not charge that they were purchased of the plaintiff); and that defendant Gladman states the facts, so that those who bought may get their money back. There is nothing in the article which can be construed into charging criminal or degrading conduct on the part of the plaintiff. No claim is made in the brief of counsel for the plaintiff that this article is libelous because it charges him with engaging in a lottery scheme. If this were so, the article would clearly be libelous, and the judgment should be reversed. The only reason claimed for holding that this article is libelous is that it imputed the crime of obtaining money by false pretenses and the crime of embezzlement.

Judgment affirmed.

MOORE and LONG, JJ., concurred with GRANT, C. J.

HOOKER, J. (*dissenting*). I am of the opinion that the demurrer should not have been sustained. It is

obvious that the alleged article charges a crime under 3 Comp. Laws 1897, § 11344, which punishes by fine not exceeding $2,000, or imprisonment not exceeding one year, those who engage in lottery schemes. This makes it libelous *per se*. To my mind, the language of the article declared upon is susceptible of the interpretation given it by the innuendo, viz., that the plaintiff had procured money from the friends of the defendant Gladman upon a raffle gotten up by the plaintiff for the professed purpose of relieving the necessities of the defendant Gladman, but that he had not applied it to such purpose, and had denied having received any money from the raffle. It is said that the words must be given their natural meaning, which forbids such a construction; but this cannot be, or there would be no occasion for the use of innuendoes. Words many times do not, upon their face, fully convey the meaning intended or understood. Sometimes, when used ironically, they mean the exact opposite of their commonly understood meaning. It is competent to show this by the circumstances under which they are used, but in such cases an innuendo becomes necessary. The meaning may depend upon the inflection, emphasis, or manner of the speaker. So, when the libel consists of a picture. 13 Am. & Eng. Enc. Law, 394; *Edwards* v. *Chandler*, 14 Mich. 471 (90 Am. Dec. 249); *Ewing* v. *Ainger*, 96 Mich. 593; *Simons* v. *Burnham*, 102 Mich. 193 *et seq.* It is elementary that, when words are susceptible of two or more constructions, the jury must determine the meaning (13 Am. & Eng. Enc. Law, 378 *et seq.*, and 385); and we should not apply the rule that words are to be understood in their plain and natural meaning where the circumstances (as set up in an inducement or indicated by the alleged libel) under which they were spoken or published show that they were intended and understood differently. We are not trying the merits of this case, and we must take these words as charged. If we do, they are libelous, both because they charge a crime, and because they charge dishonesty in withholding funds received for a given purpose.

The order of the circuit court should be reversed, and the cause remanded for further proceedings.

MONTGOMERY, J., concurred with HOOKER, J.