(December 30, 1912.)

# B. A. ROBINSON, Appellant, v. W. D. HUFFAKER, Respondent.

[129 Pac. 334.]

COUNTY COMMISSIONERS—REMOVAL FROM OFFICE—ILLEGAL CHARGES AGAINST COUNTY—ILLEGAL FEES AND CONTRACTS—FAILURE TO PERFORM OFFICIAL DUTIES—FEES.

(Syllabus by the court.)

1. Where a member of the board of county commissioners enters into a contract with the board of county commissioners of which he is a member, for the sale of personal property to the county by such member, and such contract is void under the statute, the board of county commissioners has no authority to allow the claim for such purchase price as a claim against the county. Such claims are illegal and void and are not authorized by law. (Secs. 255, 1946 and 1956, Rev. Codes.)

2. A member of the board of county commissioners cannot lease, or contract with the board for the use of real or personal property owned by him, where the statute forbids the making of such contract; nor can a claim for the contract price be filed as a claim against the county, and an allowance of such claim is void.

3. A member of the board of county commissioners cannot file or claim a compensation for extra services rendered to the county which are not authorized by law, where such member is paid a salary under the law for his services as such member of the board, although such extra services are rendered for the benefit of the county.

4. Where a member of the board of county commissioners presents a claim against the county for the purchase price of a book-press, or for services in inspecting roads and bridges at $4 per day, or for services in viewing roads and bridges on behalf of the county, or for superintending the transcribing of records where the county is created out of another county, or for any other services, and such claims are not specially provided by law to be paid by the county, such claims are void, for the reason that the statute provides for the compensation of the commissioner by fixing his salary and expenses as his full compensation.

5. Where the statutes of the state impose certain duties upon the board of county commissioners, and require certain reports and

the performance of certain duties, the county commissioners have no right or authority to exercise the arbitrary judgment that such reports are unnecessary and impracticable, for the reason that it is the duty of a public officer to obey the law, and he cannot justify his acts upon the ground that he does not believe that it will be necessary to obey such law.

6. Where an officer accepts an office with compensation fixed by law, he is bound to perform the duties for the compensation, and such officer has no legal claim for extra compensation, and a promise by the board to pay him an extra fee or sum beyond that fixed by law, is not binding, although he renders services and exercises a degree of diligence greater than could legally have been expected of him.

APPEAL from the District Court of the Ninth Judicial District for Bonneville County. Hon. James G. Gwynn, Judge.

Action to remove a county commissioner for allowing illegal fees and charges against the county, and for failure to do his duty. *Reversed.*

Phil Averitt, A. S. Dickinson, R. S. Meyer and C. E. Crowley, for Appellant.

The sale of the book-press by respondent to the county clearly falls within the things forbidden by sec. 7459, as it is not an expense item for expenses claimed to have been incurred by defendant for the use and benefit of Bonneville county in the discharge of his official duty. He cannot escape penalty of the law by claiming that he should have been prosecuted by information by the county attorney as for claiming illegal expenses incurred in the discharge of the duties of his office. (Rev. Codes, sec. 1956; *Stookey v. Board of Commrs.*, 6 Ida. 542, 57 Pac. 312; *Miller v. Smith*, 7 Ida. 204, 61 Pac. 824.)

He who is in the slightest, guilty of charging and collecting an illegal fee for services rendered or to be rendered in the discharge of his official duties is subject to removal, and the additional penalty provided by law. (1911 Sess. Laws, pp. 193, 194; *Clyne v. Bingham County*, 7 Ida. 75, 60 Pac.

76; *Rankin v. Jauman*, 4 Ida. 394, 39 Pac. 111; *Miller v. Smith, supra; San Luis Obispo County v. Petit*, 100 Cal. 442, 34 Pac. 1082; *Frenzer v. Dufrene*, 58 Neb. 432, 78 N. W. 719; *Rogers v. Portland & B. St. Ry.*, 100 Me. 86, 60 Atl. 713, 70 L. R. A. 574; *State v. O'Brien*, 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252; Dillon, Mun. Corp., 3d ed., sec. 233; *Board of Commrs. v. Brett*, 32 Okl. 853, 124 Pac. 57.)

It was error for the court to overrule the informant's objection to the testimony of the defendant, while testifying as a witness in his own behalf, to the effect that he acted in good faith and with an honest intent in filing and collecting bills, for overseeing the transcribing of the records of Bingham county for Bonneville county. The rule has been announced by this court that the defendant's testimony to such effect will not be received, and he is estopped from so testifying, and the same is incompetent. (*Dennison v. Willcut*, 3 Ida. 793, 35 Pac. 698; *San Luis Obispo County v. Petit, supra; Frenzer v. Dufrene, supra.*)

William L. McConnell and St. Clair & St. Clair, for Respondent.

Corrupt or wilful allowance of illegal claims by the county commissioners may be reached by proceedings under sec. 7445 or by appeal, but not by proceedings under the provisions of sec. 7459. (*Corker v. Pence*, 12 Ida. 152, 85 Pac. 388; *Crossman v. Lesher*, 97 Cal. 382, 32 Pac. 449; *Law v. Smith*, 34 Utah, 394, 98 Pac. 300.)

The evidence in this case clearly supports the court's special finding No. 1, that the charge for the book-press was not a fee within the meaning of sec. 7459.

The respondent in this case stands in practically the same position as did the commissioner in *Ponting v. Isaman*, 7 Ida. 581, 65 Pac. 434, wherein a commissioner was sought to be removed for advancing $100 to an attorney who represented the county in a civil suit and who afterward filed a bill for allowance for the money so advanced.

Respondent in this action did not make the sale of the article in question to the county, as a county commissioner,

nor did he present his claim against the county as such officer. (*Ponting v. Isaman, supra.*)

Before an official can be removed from office and fined under the provisions of sec 7459, the court must find that such fees were knowingly, wilfully or corruptly taken. (*Triplett v. Munter,* 50 Cal. 644; *Smith v. Ling,* 68 Cal. 324, 9 Pac. 171.)

STEWART, C. J.—This action was instituted in the district court of the ninth judicial district of Idaho for Bonneville county, on the 1st day of April, 1912, and was brought under sec. 7459 of the Rev. Codes. The information charges W. D. Huffaker with knowingly, intentionally and illegally charging and collecting fees to which he was not entitled by law as a member of the board of county commissioners for said county, and with knowingly, intentionally and illegally failing, neglecting and refusing to perform his official duties as a member of said board of county commissioners.

Two causes of action are stated, wherein it is alleged that the defendant filed various bills at different times for allowance to himself by said board, and wrongfully, intentionally and illegally assisted in allowing the same, collected the money therefor and converted the same to his own use, when in truth and in fact said bills on their face show that they were illegal charges against the county, and that they were for services which, if rendered by the defendant to the county, he could not lawfully make a charge and collect pay therefor. Among these items mentioned in the first cause of action are charges for services rendered the county in viewing roads and bridges, for certain articles furnished said county by the defendant, and for services rendered in the overseeing and transcribing of the records of Bingham county for Bonneville county. In the second cause of action the defendant is charged with knowingly, wilfully and intentionally failing and neglecting and refusing to perform certain duties of his office as a member of the board of county commissioners which are imposed upon boards of county commissioners by law.

On the filing of such petition a citation was issued. The defendant appeared and filed an answer. In the answer he

admits that he is a member of the board of county commissioners of Bonneville county; admits that he filed for allowance each and all of the bills set out in the information; admits that he assisted in causing the same to be allowed; admits that he collected the money therefor and appropriated the same to his own use; but he denies that he knowingly, unlawfully and intentionally collected any illegal fees from said county, and affirmatively alleges that said bills were not for the purposes and charges stated therein, and alleges that they were expense items which were a lawful charge against the county, and denies that he unlawfully appropriated any funds of the county to his own use. He also alleges that said bills were not for services rendered to the county as shown upon their face, notwithstanding they were sworn to by him, but that they were for the use of team and buggy furnished by defendant, and for feed for such team, and for board and lodging of defendant while viewing roads and bridges and rendering other services as commissioner of said county.

Answering to a part of the information as to articles furnished the county, and the overseeing and transcribing of the records of Bingham county for Bonneville county, he seeks to justify his acts by alleging that he saved Bonneville county money, and that he was hired by the recorder of Bingham county, J. T. Carruth, to do said overseeing and transcribing.

In answer to the second cause of action, the defendant admits that as a member of the board of county commissioners he has failed and neglected to make, or assist in making or cause to be made, or in assisting in causing to be made, any of the reports mentioned in the information, but denies that he wilfully or knowingly did so, and seeks to justify his failure to do so on the ground that it would do no good, and on the further ground that the board was advised by the prosecuting attorney of Bonneville county that the reports could serve no useful purpose.

The cause was tried by the court, and on the 27th day of May, 1912, the court made its findings of fact and conclusions of law, and rendered a judgment in favor of the defendant.

The findings of the trial court are substantially as follows:

1. That. the bill of $5.50 rendered to Bonneville county for book-press was a reasonable charge, and that the defendant, in allowing the county to have said book-press and in. putting in his bill therefor and in receiving warrant and collecting the same, acted with an honest purpose and intention and believed he had a right to so act, and that the book-press was reasonably worth $5.50; and that the charge for such book-press was not a fee within the meaning of sec. 7459.

2. That the item of $14.15, for which a bill was rendered for insuring the pesthouse, was a reasonable charge, and that the defendant acted with an honest purpose and honest intention, and did not defraud the county, and it was not a fee under sec. 7459.

3. That the bill of January 13, 1912, rendered to the county for thirteen days inspecting roads and bridges, amounting to $52, was honestly intended for expenses in viewing roads and was not for services in viewing roads.

4. That the item of July 10, 1911, of $56, for expenses on roads, and the item of October 12, 1911, for $24 for expenses. in inspecting roads, and the item of January 13, 1912, for $52, were each and all for expenses honestly incurred by the defendant in viewing roads and bridges, and covered the use of team and buggy furnished by the defendant and used by him, and board of defendant while doing such work, and the feed for such team while engaged in such work, at $4 per day, and that the charge was reasonable, and that the defendant acted honestly and with good intentions, and did not defraud the county; and that in doing so he acted upon the advice of the county attorney; that he was legally entitled so to do.

5. The court finds that as to the item of October ·7, 1911, for overseeing the transcribing of Bonneville county records, amounting to $345, and the item of July 10, 1911, for $270 for overseeing the transcribing of Bonneville county records and in rendering a bill for the same, the defendant acted upon the advice of the county attorney; that he had. a .legal· right so to do, and that in overseeing the transcribing and

receiving the warrant and collecting the same the defendant
acted honestly and in good faith; that such charges were rea-
sonable and saved the county several thousand dollars, and
that the commissioners of Bonneville county agreed that the
defendant should oversee the transcribing, and that the work
was done with the consent of J. T. Carruth, the recorder of
Bingham county, whose legal duty it was to transcribe such
records or cause the same to be done.

6. The court finds as to the item of January 13, 1912, of
$50 for barn rent, that the same was a reasonable charge, and
that the use of said barn and adjacent premises was reason-
ably worth more than $5 per month, and that the defendant
acted with an honest purpose and intention and without any
intent to defraud, and that such claim was not for fees, under
the provisions of sec. 7459.

7. As to the charges of the second cause of action, the court
finds as to the failure to file road reports with the clerk of
the board of said county and with the highway commission,
and the report of the financial condition of the county as to
highways, and the filing and publishing of the same, that the
board of county commissioners, of which the defendant was
a member, prior to the time the same should have been filed
and made, consulted the county attorney of Bonneville county
with reference to the same, and that the board of county com-
missioners, including the defendant, honestly understood from
said county attorney that such reports need not be made be-
cause it was not practical to do so. But the court finds, how-
ever, that the county attorney did not actually advise the
defendant or the board that the reports need not be made,
but that in the hurry of business the county attorney, being
consulted, said that he did not see that it would be of any
benefit to make the reports, but that the defendant honestly
believed that the county attorney did advise him that such
reports need not be made.

From the foregoing findings of fact the court concluded as
a matter of law that the defendant has not been guilty of
charging or collecting illegal fees for services rendered, or
to be rendered, in his office, and that the defendant has not

refused or neglected to perform the official duties or any of the same pertaining to his office, and the court finds that the information herein should be dismissed.

Judgment was rendered by the court that the information be dismissed. A motion for a new trial was made and over-ruled, and the motion was denied. This appeal is from the judgment and the order overruling the motion for a new trial.

The information in this case is based upon sec. 7459, Rev. Codes, which provides: "When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than twenty days from that on which the information was presented, must proceed to hear, in a summary manner, the information and evidence offered in support of the same, and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for five hundred dollars in favor of the informer, and such costs as are allowed in civil cases."

This section includes two offenses for which a defendant may be removed from office: First, the charging and collecting of illegal fees; second, the neglect to perform official duties pertaining to his office. The information charges a cause of action upon each of the grounds specified in the foregoing statute. The first cause of action consists of eight different charges of collection of illegal fees, and the second cause of action contains three charges of failure to perform duties of office. The trial court in its findings found for the defendant upon both causes of action. The appellant argues that the evidence does not support the findings.

We shall first consider the charges made in the first cause of action, and the evidence presented in support of and against the court's finding upon the different items involved. In the consideration of the different items contained in the first cause of action, and which are designated by the court in its findings, we will determine whether the allowance of the different items constituted the charging and collection of illegal fees.

In finding No. 1 the claim of $5.50 was for a book-press furnished by defendant to the county. There is evidence in the record that the county was intending to buy a book-press, and the defendant offered the one in question for the price allowed; the evidence also shows that the book-press was worth $5.50. Sec. 255, Rev. Codes, provides: "Members of the legislature, state, county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." The contract, therefore, in making this purchase, was in violation of the provision of this statute. The book-press was the property of the defendant; he was a county commissioner at the time the purchase was made, and as a member of the board of county commissioners participated with himself for the purchase, and therefore brought the contract within the provisions of this statute. (*Anderson v. Lewis,* 6 Ida. 51, 52 Pac. 163.)

Sec. 1946, Rev. Codes, provides: "No county officer must, except for his own services, present any claim, account or demand for allowance against the county, or in any way advocate the relief asked on the claim or demand made by another. Any citizen and taxpayer of the county in which he resides may appear before the board and oppose the allowance of any claim or demand made against the county."

Sec. 1956 provides: "No member of the board must be interested, directly or indirectly, in any property purchased for the use of the county, nor in any purchase or sale of property belonging to the county, nor in any contract made by the board or other person on behalf of the county, for the erection

of public buildings, the opening or improvement of roads, or the building of bridges, or for other purposes.''

The contract, therefore, made by the defendant and the county for the purchase of the book-press was void under the last two sections quoted above.

In finding No. 2 the item of $14.15 was for premium upon a policy of insurance wherein the defendant, as agent for the insurance company, wrote a policy upon the pesthouse, and in so doing was the agent of the insurance company and likewise the agent of the county, and as there was nothing in particular for the county to gain, or the defendant himself by reason of the contract, we think the finding of the court was correct.

In finding No. 3 the item of $52 was upon a claim for thirteen days at $4 per day for inspecting roads and bridges. At this time the defendant was county commissioner, and as such was acting for the county, and by reason of being such commissioner and so acting, he drew from the county the fee allowed commissioners as such, and the defendant was not entitled to collect from the county additional pay and compensation for the services rendered, and the allowance of such sum was illegal and not authorized by law.

In finding No. 4 the item of $56 was for expenses on roads, and the item of $24 was for expenses in inspecting roads, and the item of $52 was for viewing roads and bridges, and the court found that these several items were for expenses honestly incurred by the defendant in viewing roads and bridges, and covered the use of team and buggy furnished by the defendant and used by him, and included board of defendant while doing such work, and the feed for such team while engaged in such work at $4 per day, and that the charge was reasonable. There can be no question but that the defendant was entitled to his actual expenses when inspecting and viewing roads and bridges for the county, and looking after the public affairs of the county; and if it cost $4 per day to secure a team and for board, the defendant. should have been allowed for these various sums, as it was a

legitimate expense, for the payment of which the county was liable.

In finding No. 5, the two items of $345 and $270 for overseeing the transcribing of Bonneville county records, for which a bill was presented to the county and ordered paid, arose out of the division of Bingham county and the creation of Bonneville county, under an act of the legislature, and the transcribing of the public records of Bingham county affecting and relating to the territory created into Bonneville county was provided for in the act creating such county, and under that act the recorder of Bingham county was authorized to prepare such transcription of record. At the time such records were ordered the defendant was a member of the board of county commissioners of Bonneville county, and the recorder of Bingham county was authorized to prepare such records, and was looking for someone to supervise the transcription of such records, and the defendant apparently was anxious for the job, and he was employed for that purpose. Of course, he was interested in seeing that the record was properly prepared, but at that time he was a county commissioner, and under the statutes that have been cited above he could make no contract by which the county, of which he was a county commissioner, could agree to pay him any fees or reward or compensation other than that earned as county commissioner; and the charges he made as superintendent certainly did not give him any legal right to any compensation; that was his duty as county commissioner, and there is very little evidence in this case that shows he did in fact render any services which were of the value of that charged and allowed.

In finding No. 6 the item of $50 was for barn rent, where the defendant was the owner of a barn, and work was being done on the roads of the county, and they needed a place to keep the implements and teams, etc., and the defendant rented a barn to the county—another contract made by him which was void under the statute.

We think there is no question in this case upon the evidence and the character of the contract made but that the

charges to which we have alluded above were illegal, and for fees and services which were not authorized by law, and that the general course and disposition of the defendant was a continuous effort on his part to receive compensation for himself and his own personal gain upon every opportunity where he might sell his own property or use it, or contribute his own services and receive compensation during the time he was county commissioner, and under the law such demands and charges were unauthorized and in violation of the law.

This court in a number of decisions has disapproved and condemned claims and contracts made similar in many respects to those disclosed in the present case. (*Rankin v. Jauman*, 4 Ida. 394, 39 Pac. 1111; *Miller v. Smith*, 7 Ida. 204, 61 Pac. 824; *Ponting v. Isaman*, 7 Ida. 581, 65 Pac. 434. See, also, *San Luis Obispo County v. Pettit*, 100 Cal. 442, 34 Pac. 1082; *Skeen v. Chambers*, 31 Utah, 36, 86 Pac. 492.)

We will now consider the charges made in the second cause of action. The charge is the neglect to perform certain official duties pertaining to the office held by the defendant, in that the county commissioners, including the defendant, neglected and refused to comply with the provisions of secs. 887c and 887d of chap. 60 of the Sess. Laws of Idaho of 1911. The defendant claims that the board acted upon the advice of the county attorney, and that the board had no means at hand to make the report, if the advice had not been given.

It appears from the evidence in the case that the matter of making the report, as required by the enumerated sections of the statute, was considered by the board, and that the board talked over the making of the report, and it was asserted that it could not be made at that time; and while they were talking about it, the county attorney came into the office and one of the members of the board asked the county attorney if there was a state highway commission, and the county attorney said he did not know anything about it; and that the inquiry was then made of the county attorney as follows: "What is the good of making a report?" and the county attorney said, "I don't know of any"; and the county attorney said he did not think it would do any good, and for

that reason the report was not made. The county attorney, however, testifies that he did not advise the board of county commissioners upon the question, and did not advise them to fail to make the report. Upon this evidence the court found that the board honestly understood from the county attorney that such report need not be made, because it was not practical to do so at the time when they first became aware of the law, or thereafter up to the time such report was required to be made, and that in the hurry of business the report was not made.

Sec. 887c, Sess. Laws 1911, p. 169, being a section in an act amending the code and approved by the governor after passage on March 8, 1911, provides: ''On or before the first day of February in each year, the board of county commissioners shall make a report of the condition of the work, construction, maintenance and repair of all the highways within the county, accompanied by a map or maps thereof, together with any other facts necessary for setting forth generally the situation and condition of the highways within such county. Such report shall be made in duplicate, and one of such reports should be filed in the office of the state highway commission and one with the clerk of the board of county commissioners.'' This report was not made, and the evidence shows that such action was not based upon the legal advice of the prosecuting attorney; but whether the advice was given or not, the statute imposes this duty upon the board of county commissioners, and from reading the section it would seem that such report would be a matter of great concern to the state and the highway districts of the state, and the general improvement of the roads of the state and the common good of the people; and the defendant and the board of county commissioners of Bonneville county had no authority to exercise the arbitrary judgment that it could be of no service. The legislature which enacted such law believed it would, and the legislature had the right to pass such a law, and it is the duty of a public official to obey the law, and he cannot justify his acts upon the ground that he does not believe it will be necessary to obey such law.

It is also alleged in the complaint, and such allegation has been proven, that the board of county commissioners, which included the defendant, failed to make the report provided for by sec. 887d of the foregoing act. This section requires the board of county commissioners to make and file in their office a full, true and correct statement of the financial condition of the county in respect to highways, on or before the first day of February of each year, and of their expenditures and appropriation for highway purposes during the preceding year; and that a copy of such statement shall be published in at least one issue of some newspaper published in the county. This section would seem to be of great importance, and properly requires the commissioners to give public notice of the expenditures and appropriation for highway purposes during the preceding year. Yet the defendant and his associates repudiated this statute, and did not comply with the law, and disregarded the command of the legislature and used their own individual judgment, rather than the judgment of the legislature.

By the provisions of an act approved March 7, 1911, Sess. Laws 1911, p. 558, relating to the fixing of the annual salary of county commissioners in the several counties of the state, Bonneville county is put in the second class, and the act fixes the salary of a county commissioner of the second class at $500 per year, and actual and necessary expenses. So, at the time the defendant performed the services for which he made claim, and which were allowed, and which are now alleged to have been illegal contracts and claims, he was a county commissioner, and for his services as such he received a salary from the county of $500 per year and necessary expenses. Taking together these various sections of the statute enumerated in this opinion, including the latter section, it is clear that the legislature intended to place a limit upon the power of a board of county commissioners in order to protect the public interests and prevent the collection of illegal fees and false and fraudulent claims from the county, and to prohibit the county commissioners from making contracts with the county whereby the officers would receive

benefits or profits, and to prevent the sale or transfer from commissioners to the county, or the purchasing of property which belonged to the county, or the making of contracts with the county which are prohibited by law.

In this case it is apparent that the defendant and the county commissioners assumed the right to make any kind of a contract with the county each thought proper and right as individuals, without reference to the legal and lawful power of the individual while acting in his official capacity. In the case of *Irwin v. Yuba County,* 119 Cal. 686, 52 Pac. 35, the supreme court of California says: "It may be safely stated as a rule that one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which itself finds authority of law. It is not sufficient that the services performed, for which payment is claimed, were beneficial. Nothing is better settled than that a person who accepts an office with compensation fixed by law is bound to perform the duties for the compensation." In that same case the court quotes from Dillon, Municipal Corporations, sec. 233, wherein the author sets forth the following rule: "The rule is of importance to the public. To allow changes and additions in the duties properly belonging or which may properly be attached to an office to lay foundation for extra compensation would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and, if these distinctions are much favored by the courts of justice, it may lead to great abuse." The same author also says, in sec. 234: "Not only has an officer, under such circumstances, no legal claim for extra compensation, but a promise to pay him an extra fee or sum beyond that fixed by law is not binding, though he renders services and exercises a degree of diligence greater than could legally have been expected of him."

In the case of *Hartson v. Dale,* 9 Wash. 379, 37 Pac. 475, the supreme court of Washington had under consideration this question, and in that case held in effect that attendance by a member of the board of county commissioners before the state board of equalization to resist .the raising of the county assessment-roll was no part of his duty as such commissioner, and could not be made the subject of a claim against the county. A similar rule is also announced in the following cases: *Board of Supervisors v. Ellis,* 59 N. Y. 620; *Moore v. Independent District,* 55 Iowa, 654, 8 N. W. 631; *Ewing v. Ainger,* 96 Mich. 587, 55 N. W. 996.

The trial court found, with one or two exceptions, that the several items alleged in the first cause of action and described in the findings of the court were not fees within the meaning of sec. 7459, Rev. Codes. This was clearly an error. This court held to the contrary in the case of *Rankin v. Jauman,* 4 Ida. 53, 56 Pac. 502. In that case the defendant was accused of having charged for seventy-nine days' service at $6 per day, and four hundred and thirty miles at forty cents per mile in excess of what was actually due him. The objection was made there as here, that the information did not accuse the defendant of having charged and collected illegal fees. This court said: "It is urged that the information does not accuse the defendant of charging and collecting illegal fees for services rendered, or to be rendered, in his said office. If it does not, we are at a loss to know how such an accusation was made. The information accuses defendant with having charged and collected, as county commissioner, pay for ninety-six days' service as such commissioner during the first quarter of the year 1893, when in fact he had rendered not to exceed seventeen days' service; and it also accuses him of having charged and collected mileage for four hundred and thirty miles' travel, when in fact he had not traveled any number of miles whatever. It also alleges that he charged and collected forty cents per mile for said travel, when in fact the law allows only twenty cents. The allegations of the information are very pointed and specific, . . . . and come clearly within the provisions of said section."

In the case of *Skeen v. Craig*, 31 Utah, 20, 86 Pac. 487, the supreme court of Utah had this identical question under discussion in the same kind of an action we are now considering, and specifically announced what we approve as the correct statement of the law and liability under a similar statute to sec. 7459. In that case the supreme court said: "It is conceded that the construction of the section of the statute under which this action is brought depends more upon the sense in which the term 'fees' is therein used than upon the technical definition of the word as contradistinguished from other terms denoting the compensation of public officers. The terms of this section of the statute, wherein it refers to public officers and the 'charging and collecting illegal fees,' are general, and not confined to the fees charged and collected by any one class of public officers not liable to impeachment. Now, it is a well-recognized rule of statutory construction that general terms and expressions of a statute are to be given a general construction unless some other provision of the statute or the context itself shows that the legislature intended them to be used and applied in a limited or restricted sense. . . . . By its very terms the statute includes any officer (not liable to impeachment), who has been guilty of charging and collecting illegal fees. To bring the charging and collecting of illegal fees within the statute, it is not necessary that such fees be obtained from any specific source or sources, nor that they be charged and collected by an officer who is authorized by law to collect fees for specific services. The charging and collecting of illegal fees from the state, county or municipality, by a public officer for private gain, is as clearly within the statute as the charging and collecting of illegal fees from a private individual. It would seem that if it were intended to limit proceedings of this kind to include only a certain or specified class of public officers that might become delinquent, the legislature would have said so."

There can be no question but that the section applies to a claim or charge made by a public officer for services, or under any contract with the municipality of which such officer is an official, where such officer makes a claim against the munici-

pality whereby the officer seeks to receive a compensation not provided or authorized by law, and for which no payment or fee is provided by law. The judgment in this case is *reversed* and the cause remanded for further proceedings in accordance with this opinion. Costs awarded to appellant.

Ailshie and Sullivan, JJ., concur.