(February 24, 1898.)

ANDERSON, State Auditor, v. LEWIS, Secretary of State.

[52 Pac. 163.]

Appropriation for Printing and Binding Journals.—Where an appropriation is made by the legislature for "publishing the journals of the Senate and House and the Sessions Laws," such act is intended only to provide compensation for the printing and binding thereof.

Copies of Laws and Journals—Secretary's Duty to Prepare.—It is part of the official duty of the Secretary of State to prepare the copies of the laws and journals for the printer.

Fees Paid to Secretary Belong to State Treasury.—Where the Secretary of State has received fees for making such copies, such fees are required to be paid into the state treasury by the Secretary of State under the provisions of section 19, article 4 of the constitution.

Same—As to Furnishing Copies to Printing Company.—Where the Secretary of State makes a contract with a printing company, to publish the laws and journals by the terms of which contract the secretary is to receive a certain portion of the contract price for the preparation of the copies for the printer, such contract is within the prohibitions of section 365 of the Revised Statutes of Idaho.

(Syllabus by the court.)

An original proceeding by *mandamus*.

Samuel H. Hays and Henry Z. Johnson, for Plaintiff.

Section 209 of the Revised Statutes provides that whenever any person has received moneys, or has collected moneys belonging to the state and fails to account therefor, or who fails to pay into the treasury any money belonging to the state, upon being required to do so by the auditor, within twenty days after such requisition, the auditor must state an account with such person charging twenty-five per cent damages and interest at ten per cent. *Mandamus* is the proper remedy in this case. (*State v. Stanton*, 14 Utah, 180, 46 Pac. 1109; *State v. Roderick*, 23 Neb. 505, 37 N. W. 77.) Section 190 of the Revised Statutes makes the secretary the legal custodian of the laws and journals. Section 19, article 4 of the constitution fixes, among other things, the salary of the Secretary of State at $1,800 per annum and provides that the compensations enumerated shall be in full for all services by said officers respectively rendered in any official capacity or employment whatever during their respective terms of office. Subdivision 7, section 191 of the Revised Statutes makes it the offcial duty of the secretary to furnish on demand to any person paying the fees therefor a certified copy of all or any part of any law or record in his office. Since it is the secretary's duty to make copies of the laws and journals when requested, we conclude that it is an "official duty," and since he is entitled to certain fees therefor, and has received them, and has not paid them into the state treasury, his delinquency is fixed, since the constitution provides that "no officer shall receive for the performance of any official duty any fee for his own use," but all fees must be paid into the state treasury. We contend that the defendant, so far as it relates to any of the matters of his office, has no "private or personal capacity." He is Secretary of State both during and after office hours, including nights and Sundays. (*Ring v. Devlin*, 68 Wis. 384, 32 N. W. 121; Mechem on Public Officers, secs. 839, 840; *State ex rel. Frontier Co. v. Kelley*, 30 Neb. 574, 46 N. W. 714; *Ada County v. Ryals*, 4 Idaho, 365, 39 Pac. 556; *State v. McFetridge*, 84 Wis. 473, 501, 51 N. W. 1, 998; *State v. Leidtke*, 12 Neb. 171, 10 N. W. 703.) Defendant denies certifying to the laws but on succeeding page

196 of the 1897 Laws appears his official certificate, with seal and signature, of which this court must take judicial notice. Having made this certificate, he was entitled to the full amount of the fee for copying the laws. (See *Potter v. Talkington,* 5 Idaho, 316, 49 Pac. 14; *Yates v. National Home,* 103 U. S. 674; *Banks v. State,* 60 Md. 305; *Lucas v. Allen,* 80 Ky. 681; *People v. Township,* 11 Mich. 221.)

N. M. Ruick, for Defendant.

The real question and the all-important one raised by the demurrer to the answer in this case is: Was the defendant, as Secretary of State, required by law to perform the services which were, concededly, performed by him in this case? Were the services performed by the defendant, as and in the manner as set forth in his answer, performed by him in his official capacity? In this case the contract to publish the laws and journals was let to the Sentinel Printing Company, and, by the terms of their contract, they were to transcribe, compile, publish and bind the · same, in consideration of the sum of $2,000. It was immaterial as to how or from whom the "copy" was obtained or through whom it was obtained, so that it was procured complete and in form to be set up by the printer; since the records of the office of Secretary of State are open to the public, this copy could as well be procured by one as another, and it did not require this copy to be certified to answer the purpose sought in supplying the printer therewith. The fact should not be lost sight of that this "publishing" was being done for, on behalf of and at the request of the state, and was incidental to procuring to be published such laws and journals. The furnishing of this copy to the printer or publisher, at his request was not an act in any sense sufficient, inasmuch as it was not a duty required by law of any official, in an instance like this, where the laws and journals are being published by and for the state. We submit therefore that the defendant, as Secretary of State, not being required by law to perform these services, and the services being such as could have been performed with equal facility and utility by a private individual, that the services so performed by the defendant were wholly unofficial and that the

compensation received therefor was in no sense an official compensation or "fee" required by the constitution to be turned into the state treasury. As cases and authorities upon the point that an officer is entitled to extra compensation for services performed by him, which services are extraofficial and not required of him by virtue of his office, we cite the following: 19 Am. & Eng. Ency. of Law, 530, note 4; *Love v. Baehr*, 47 Cal. 364; *Curtis v. Sacramento etc.*, 13 Cal. 290; *Evans v. Trenton*, 24 N. J. L. 764; *Burroughs v. Board*, 29 Kan. 196; *McBride v. City of Grand Rapids*, 47 Mich. 236, 10 N. W. 353; *Niles v. Muzzy*, 33 Mich. 61, 20 Am. Rep. 670.

HUSTON, J.—The facts are, as they appear from the record, in substance as follows: In the appropriations for current expenses of the state government, passed by the fourth session of the Idaho legislature, there was included in the appropriations for Secretary of State, for "publishing House and Senate journals and Session Laws of 1897, $2,000." The Secretary of State made a contract with the Sentinel Printing Company, through its agent or manager, for the printing, binding, etc., of said laws and journals, for the sum of $2,000. It appears that of said sum of $2,000 the sum of $675 was paid to the Secretary of State, for copying and preparing said laws and journals for the printer. It is claimed by the petitioner that the sum so received by the Secretary of State was so received as fees by virtue of his office, and, as such, should have been paid into the treasury of the state by the Secretary of State, under the provisions of section 19 of article 4 of the constitution of Idaho. Said section 19 provides, *inter alia*, that the Secretary of State shall receive a salary of $1,800 per annum, and, further, "the compensation enumerated shall be in full for all services by said officers, respectively, rendered in any official capacity or employment whatever during their respective terms of office. No officer named in this section shall receive, for the performance of any official duty any fee for his own use; but all fees fixed by law for the performance by either of them of any official duty shall be collected in advance, and deposited with the state treasurer quarterly to the credit of the state." It is contended by defendant that the labor so performed by him was not done in his

official capacity, and that it was done out of office hours, and that, therefore, the compensation received by him therefor does not come within the provisions of said section 19 of article 4 of the constitution. We do not think this contention of the defendant is maintainable.

The Secretary of State is made by law the custodian of the laws passed by the legislature and of the journals of each house thereof. It is made his duty to publish the same, and this duty, it seems to us, includes, of necessity, the preparation thereof for the hands of the printer. This has been the uniform course, not only under the state government, as we are informed, but was that always pursued under the territorial organization by the secretary of the territory, to whose duties the Secretary of State mainly succeeds. If any other course has been pursued under the state government, we are not aware of it, and it was certainly unwarranted. The laws, when printed, must be authenticated by the certificate of the Secretary of State, under the seal of the state, of which the secretary is also the custodian. That the duty to publish the laws does not include the preparation thereof, for printing and publishing, seems to us inconsistent with reason or precedent. This assumes that it was not the duty of the secretary to prepare the copies of the law for the printer, but that, in the letting of the contract, it was the understanding that the expense of making the necessary copies, indexes, etc., was to be borne by the printing company having the contract. Such copies must be made in the secretary's office, and be verified by him. They must be made by him, or under his direction and supervision, and he could only do these things in his official capacity, and the fees chargeable therefor are fixed by law, and are required to be paid into the state treasury. It is begging the question to say that the printer could put a corps of copyists into the office of the secretary to perform such work, for if the secretary declined, as well he might, to certify or authenticate copies so made, the labor would be thrown away. The law should not receive an interpretation which would lead to such invidious and disturbing conditions.

It would be idle to say that because the word "publishing," in its strictest sense, does not include "printing," therefore the ap-

propriation made by the legislature for the publishing "of the laws and journals did not include the expense of printing"; but such a conclusion would not, it seems to us, be any more fallacious than the construction contended for by defendant. The law must be so construed as to carry out the manifest intention of the lawmakers; and, in construing the law upon this subject, we must take into consideration both the provisions of the constitution and the laws applicable thereto, and from these determine the intention of the lawmakers; and, so taking them, it is palpable to our minds that it was intended that the salary allowed the officer should be in full compensation for all services rendered by him by virtue of his office or in his official capacity.

We have examined all of the authorities cited, and we believe the views we have reached are sustained fully by all the cases pertinent to the question under consideration. The case of *State v. Liedtke,* 12 Neb. 171, 10 N. W. 703, cited by defendant, is particularly in point, and arose upon circumstances very like those in the case under consideration, and the decision was upon a constitutional provision similar to section 19 of article 4 of the Idaho constitution.

There is another feature of this case, and the law applicable thereto, to which it is as well, perhaps, to call attention. It is conceded that the amount paid the defendant was a part of the consideration expressed in the contract made with the Sentinel Printing Company, and that the consideration expressed in said contract was fixed in view of and with relation to the sum to be paid to the defendant for the services performed by him. This, we think, was clearly within the prohibition expressed in section 365 of the Revised Statutes of this state. "Members of the legislature, territorial, county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." The damages allowed by section 209 of the Revised Statutes, are intended as a penalty for a willful dereliction, or refusal by the officer upon whom demand is made; and as it is apparent that the action of the defendant was not attributed to any design or desire on his part to avoid a duty, or

misinterpret the law to his own advantage, and, moreover, as he alleges in his answer that he acted in the matter throughout upon the advice of his proper legal adviser, the attorney general, we are not inclined to enforce the penalty of twenty-five per cent damages or the interest. The writ of mandate will issue commanding the defendant to pay into the state treasury the sum of $675, so received by him as aforesaid, on or before the first Monday of April, 1898. The clerk is directed to charge no fees in this case.

Sullivan, C. J., and Quarles, J., concur.