(No. 5758. February 16, 1932.)

GEORGE W. CLARK, Respondent, v. UTAH CONSTRUCTION COMPANY, a Corporation, Appellant.

[8 Pac. (2d) 454.]

Edwin Snow, for Appellant.

Earl E. Garrity and William Healy, for Respondent.

LEEPER, J.—The plaintiff declares upon three causes of action to recover damages for trespass upon lands by defendant's sheep. The allegations in each cause of action are identical except with reference to the ownership of plaintiff. In the first cause of action he alleges that he is a lessee of the lands therein described; in the second cause of action he alleges that one Dora A. Clark is the owner of the lands therein described, and that she assigned to this plaintiff her cause of action against this defendant; in the third cause of action he alleges that R. J. Clark and R. A. Clark are the owners of the lands therein described, and that they assigned to this plaintiff their cause of action against this defendant. The complaint adequately alleges possession and the essential elements of a malicious trespass and prays for compensatory and exemplary damages. To this complaint a general and special demurrer was lodged against each cause of action, but was later withdrawn, and an answer of general denial was filed. After evidence was taken the third cause of action was dismissed by the plaintiff, and a jury returned a verdict against the defendant in the sum of $200 upon each of the other causes. The appellant concedes that no error is available to it as to the first cause. This appeal, therefore, is concerned only with the second cause of action.

The record shows these to be the facts: The plaintiff, George W. Clark, was county commissioner of Owyhee county for the term beginning in January, 1929, was re-elected in the fall of 1930, and presumably holds that office at the present time. Dora A. Clark is the wife of George W. Clark and J. R. Clark and R. S. Clark are his sons. At the time of the trial (February, 1931) these boys were thirteen and fifteen years of age, respectively. The muniment of title upon which is based the allegation of ownership of the lands described in the second cause of action is a deed from Owyhee county to Dora A. Clark, dated January 15, 1930, upon which appears the signature of George W. Clark as county commissioner of Owyhee county. The deed upon its face does not disclose the marital relationship of George W. Clark and Dora A. Clark at the date thereof. Nor was evidence to this effect directly elicited. The record as a whole, however, is such as to render an inference of that fact unavoidable. It shows that she was his wife at the date of the trial, that there is identity of names, that discussions with her were had in the year 1929, and that George W. Clark recorded the deed shortly after it was issued. The court below assumed the relationship in his charge to the jury without objection. This court will recognize the obvious. The deed, as shown on its face, was issued pursuant to a bid at public auction, and there is no evidence in the record as to whether the purchase price was paid out of funds belonging to the community composed of George W. Clark and Dora A. Clark, or out of funds owned separately by Dora A. Clark.

While the third cause of action was dismissed, the facts connected with it are highly significant. The grantees named in the deed upon which was based the allegation of title were the minor sons of George W. Clark. This deed was likewise a deed from Owyhee county, upon which appeared the signature of George W. Clark as a county commissioner, is dated June 28, 1929, and purported to convey some 6,000 acres of the county domain. It was based upon a bid at public auction, and plaintiff testified that he actually paid for it, presumably out of funds he owed his children. The

only inference which we can gather from the evidence is that plaintiff actually concerned himself in acquiring this property, in the name of his children, without making any fine-spun distinction as to the source of the funds which paid for it. Since the cause was withdrawn, the jury made no finding on this issue and we are left to our own conclusions.

There is no extrinsic evidence with reference to the source of the funds with which was paid the purchase price to Owyhee county of the lands described in the deed to Dora A. Clark, nor does the deed recite that the rents and profits thereof are to be applied to her sole and separate use. The fact of the marital relationship between George W. Clark and Dora A. Clark appears *dehors* the deed, in the evidence of the plaintiff. Appellant contends that, in the absence of evidence, the statutory presumption prevails, and that this property must be deemed to have been acquired with community funds and is therefore community property, in which plaintiff owns his community interest. (C. S., sec. 4660.) Respondent concedes that this presumption should attach except for two matters. First: There is no proof of the marital relationship on the date the deed was executed. Second: The wife had the right to purchase this land from Owyhee county with her separate funds and that therefore the general presumption of regularity and legality of the official act of her husband will prevail over the statutory presumption embodied in C. S., sec. 4660.

Respondent also takes the position that, even if the presumption that this is community property does rightfully come into being, the illegality arising as a result thereof is not available as a defense, (1) because the illegality was not pleaded as an affirmative defense, and (2) because defendant, a wilful trespasser, cannot question plaintiff's title. These contentions we shall consider later.

We have already disposed of respondent's contention that the marital relation at the time the deed was executed was not proved. In our opinion the record is adequate to show this fact.

The argument that a presumption of regularity and legality adheres in the deed from Owyhee county to Dora A. Clark, and that this presumption is of sufficient weight to override the statutory presumption that the property acquired thereby was community property, is necessarily bottomed upon the assumption that the purchase of this property by Dora A. Clark with her separate funds would not contravene the statutes hereinafter referred to. Neither appellant nor respondent has favored us with authorities upon this proposition, which we deem to be the vital point in this case. Counsel for respondent concedes that if this is community property, the statutes which prohibit a county commissioner from being interested, directly or indirectly, in any sale of property belonging to the county, were violated by George W. Clark and Dora A. Clark.

The pertinent sections of the statutes are as follows:

"No member of the board must be interested, directly or indirectly, in any property purchased for the use of the county, nor in any purchase or sale of property belonging to the county, nor in any contract made by the board or other person on behalf of the county, for the erection of public buildings, the opening or improvement of roads, or the building of bridges, or for other purposes." (C. S., sec. 3515.)

"Every officer or person prohibited by the laws of this state from becoming a purchaser at sales, or from purchasing scrip, or other evidences of indebtedness, who violates any of the provisions of such laws, is punishable by a fine of not more than $1000 or by imprisonment in the state prison not more than five years." (C. S., sec. 8122.)

"Members of the legislature, state, county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members." (C. S., sec. 386.)

"State, county, district, precinct and city officers must not be purchasers at any sale or vendors at any purchase made by them in their official capacity." (C. S., sec. 387.)

"Every contract made in violation of any of the provisions of the two preceding sections may be avoided at the instance

of any party except the officer interested therein.'' (C. S., sec. 388.)

The purport of the language used in these statutes is clear and unmistakable. A county commissioner is absolutely prohibited from being interested *directly or indirectly in any sale* of property belonging to the county. A violation of this statute by the officer is a felony. The general statutes merely reiterate the prohibition as to all officers. A sale of county property to the wife of one of the county commissioners contravenes the statutes above set forth, whether the purchase is paid with community funds or with the separate funds of the wife. The reason is obvious; in either event the commissioner is *interested,* within the purview of the law. Even if the purchase is made with separate funds, the law governing the marital relationship in this state imputes to the husband such an interest in the separate property of his wife, as to render the transaction obnoxious to the statute.

A husband is interested in the separate property of his wife for several reasons. He is charged with the maintenance and support of the wife and minor children. (C. S., sec. 4654; *Hall v. Johns,* 17 Ida. 224, 105 Pac. 71; *Edminston v. Smith,* 13 Ida. 645, 121 Am. St. 294, 92 Pac. 842, 14 L. R. A., N. S., 871.) Yet if he fails to support them, the wife can purchase necessaries and charge her separate estate with them. (*Edminston v. Smith, supra.*) If the husband becomes unable or incompetent to support himself, and has neither separate nor community property, the wife must support him out of her separate property. (C. S., secs. 4654, 4669; *Hall v. Johns, supra.*) Under the provisions of C. S., sec. 5438, a homestead for the use and benefit of the family may be selected from the separate property of the wife with her consent. The rents and profits of the separate property of the wife are community property (C. S., sec. 4660), although subject to the management and control of the wife (C. S., secs. 4666, 4667), and exempt from execution against the husband (C. S., sec. 6919). (*McMillan v. United States Fire Insurance Co.,* 48 Ida. 163, 280 Pac.

220.) Under the provisions of C. S., sec. 7793, should the wife die without having made a will, the surviving husband would inherit one-third of her separate property, under the conditions here prevailing.

The interests mentioned do not confer upon the husband any present estate in the separate property of the wife. Neither do they abridge, or in anywise restrict or interfere with her absolute power to manage, control and convey the same, and the rents and profits therefrom under C. S., secs. 4657 and 4667. We only hold that these beneficial interests abiding in a husband are such as to fall within the inhibitions of the statutes under discussion. Aside from these actual beneficial interests, a husband naturally looks toward the best interests of his wife in any transaction affecting her, even though she has the right to deal independently with her separate estate, and from this stand-point we cannot admit the propriety of a public officer dealing with his own wife in his official capacity. It is a situation never tolerated even in transactions where the husband violates a private trust. (*Hay v. Long,* 78 Wash. 616, 139 Pac. 761.) We can see no reason for indulging in a legal fiction which countervails marital interest.

Similar contentions have been passed on by this court. In *Nuckols v. Lyle,* 8 Ida. 589, 70 Pac. 401, the court was concerned with a contract entered into by a school board with the wife of one of its members. The change in the law since this decision giving the wife management of her earnings, does not render it any less controlling:

"Appellant contends that the said contract was void, and relies upon the principle that public policy forbids a member of any official board from being financially interested in any contract made by the board, and upon the provision of section 45 of the act of February 6, 1899, which expressly provides that 'no trustee shall be pecuniarily interested in any contract made by the board of trustees of which he is a member, and any contract made in violation of this section is null and void.' (See Sess. Laws 1899, p. 96.) Touching the validity of said contract, only one question is necessary

to be determined: Was the husband of Mrs. Young pecuniarily interested in the contract? We think he was. Under the laws of this state the earnings of the wife constitute a part of the community property. The husband has the control and management of the community property, and he may use it and is part owner in it, and hence is pecuniarily interested in it. The said contract was, by the terms of the said statute, null and void. We have other statutes prohibiting contracts of this kind. (See Rev. Stats., Secs. 365–367.)''

In the case of *Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575, the court had before it for decision the question as to whether the assignee of certain void county warrants could recover from the assignor upon his indorsements, the assignee being the wife of one of the county commissioners who issued the warrants. The warrants were purchased with the separate funds of the wife by Libby, the county commissioner. Payment was resisted upon the ground that the assignment was absolutely void, under the statutory provisions prohibiting dealing in county warrants by a county officer. The court said:

''The appellant, however innocent and ignorant of these provisions she may have been in fact, is in law presumed to know of the punishment and limitations which have been prescribed by these sections, and when she purchased the warrants in question, through her husband, who was at that time one of the county commissioners of Kootenai County, she did so, knowing that under the statutes he was expressly prohibited from purchasing them, and that the county treasurer would henceforth be without authority to pay the warrants. If she chose to purchase the warrants under these conditions, she did so at her own risk. She received precisely what she purchased, namely, purported warrants of Kootenai County, which her agent, being a county commissioner, could not legally purchase, either for himself or for anyone else, or in any capacity. The appellant also had full knowledge that the act of purchasing these warrants invalidated them and raised an absolute bar against their payment by Kootenai

County, and therefore she is not in a position to complain that she received no consideration.''

In *Robinson v. Huffaker*, 23 Ida. 173, 129 Pac. 334, the court passed upon the sale of a book-press by a member of the board of county commissioners, in the following language:

''Sec. 255, Rev. Codes provides: 'Members of the legislature, state, county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members.' The contract, therefore, in making this purchase, was in violation of the provisions of this statute. The book-press was the property of the defendant; he was a county commissioner at the time the purchase was made, and as a member of the board of county commissioners participated with himself for the purchase, and therefore brought the contract within the provisions of this statute. (*Anderson v. Lewis*, 6 Ida. 51, 52 Pac. 163.)

''Sec. 1946, Rev. Codes (now C. S., sec. 3505), provides: 'No county officer must, except for his own services, present any claim, account or demand for allowance against the county, or in any way advocate the relief asked on the claim or demand made by another. Any citizen or taxpayer of the county in which he resides may appear before the board and oppose the allowance of any claim or demand made against the county.'

''Sec. 1956 (now C. S., sec. 3515) provides: 'No member of the board must be interested, directly or indirectly in any property purchased for the use of the county, nor in any purchase or sale of property belonging to the county, nor in any contract made by the board or other person on behalf of the county, for the erection of public buildings, the opening or improvement of roads, or the building of bridges, or for other purposes.'

''The contract, therefore, made by the defendant and the county for the purchase of the book-press was void under the last two sections quoted above.''

In other cases, not directly in point, this court has held public officers to strict compliance with the law. See *Rankin*

*v. Jauman,* 4 Ida. 394, 39 Pac. 1111; *Miller v. Smith,* 7 Ida. 206, 61 Pac. 824; *Anderson v. Lewis,* 6 Ida. 51, 52 Pac. 163.)

It will be noted that in each of the above cases the contracts in which the public officers were interested, were held to be absolutely void. It seems that the law is too well settled in Idaho to require further comment.

That a husband has such a pecuniary interest in the separate property of his wife as to render dealings with her in his official capacity illegal, is held by the supreme court of California:

"The foregoing authorities lead us unavoidably to the conclusion that *C. H. Nielsen, as the husband of the petitioner, had a direct and indirect pecuniary interest in the contract which he was purporting to execute as superintendent of schools of the County of Butte. The contract directly adds a sum of money for the support of the wife, and, indirectly, for his own support.* We also think it is apparent that section 158, Civil Code, empowering husbands and wives to contract with each other and enter into business engagements respecting property, etc., which either might, if unmarried, relates to cases where the husband is acting for himself and in his own right and individual capacity, and not as the agent or trustee of some other person or of the general public. In such cases the contract on the part of the husband which he is authorized to make must be such in which he has neither a direct nor an indirect pecuniary interest, even though the confidential relation between husband and wife might not prohibit the making of the contract." (*Nielsen v. Richards,* 75 Cal. App. 680, 243 Pac. 697.) (Italics ours.)

A general interpretation of statutes identical with our own was laid down by the supreme court of California in *Berka v. Woodward,* 125 Cal. 119, 73 Am. St. 31, 57 Pac. 777, 45 L. R. A. 420, in this language:

" 'The general principle is well established that a contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void.

This rule applies to every contract which is founded on a transaction *malum in se*, or which is prohibited by a statute on the ground of public policy.' Nor in such cases does it matter whether the contract has been partially or wholly performed, or whether the consideration has passed or not. *'The test,' says Judge Duncan in Swan v. Scott, 11 Serg. & R. 164, 'whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff · cannot open his case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant.'* And this must be so; for, while, as a matter of private justice between individuals, it would be but fair that one, under such an illegal contract, should restore the consideration or should make the payment, the rights of the public are superior to any such private considerations, and the public's right is that the fountains of justice shall remain unpolluted; that no court shall lend its aid to a man who grounds his action upon an immoral or illegal act. Therefore there is no place for equitable considerations, presumptions, or estoppels.'' (Italics ours.)

This interpretation has been followed, strengthened and sustained in a long line of subsequent decisions, a few of which are: *Stockton Plumbing Co. v. Wheeler,* 68 Cal. App. 592, 229 Pac. 1020; *Moody v. Shuffleton,* 203 Cal. 100, 262 Pac. 1095; *Shasta County v. Moody,* 90 Cal. App. 519, 265 Pac. 1032:

This deed was and is absolutely void. It is void because the act of issuing it operates in violation of a positive statute and of the public policy of the state.

There is a suggestion in the brief of respondent that the deed was not void, but only voidable, by reason of the provisions of C. S., sec. 388. It will be noted that this section expressly refers to violations of sections 386 and 387, immediately preceding it, and that all of these sections are general in their nature. The act complained of here is in violation of section 3515 and constitutes a felony under

section 8122. It is directly prohibited, without any restrictions whatsoever, and no one participating therein can acquire any rights thereby, defeasible or otherwise. To hold otherwise would amount .to condonation of a crime. In our opinion, the provisions of section 388 do not warrant any such construction as contended for by respondent. It provides that the contract "may be avoided at the instance of any party except the officer interested therein." The fair import of this language is, not to impute any validity to the illegal transaction, but to grant authority to any party to attack it, as distinguished from the corporate body; and to refuse all relief to a guilty officer.

The act being prohibited by statute, the intent of the parties is of no moment. In this case, however, we find the very public officer who breached the statutes, bringing this action to recover damages as the assignee of his own wife who had acquired the property through his illegal act. He alone had been in possession of the property and had placed improvements thereon. He had likewise issued a deed to his own minor children for over 6,000 acres of the public lands, and brought this action for trespass as their assignee. There was no evidence whatever from the plaintiff as to the source of the funds which entered into the purchase of the Dora A. Clark land. He testified that he paid for the land acquired by his minor children himself out of money which he owed them. A careful consideration of the record leaves an indelible impression of wilful misfeasance by a public officer.

Having reached this conclusion, the discussion with reference to presumptions, which seem to have been the chief stock in trade of both parties, is without point. The deed is null and void, and no title whatsoever passed to the grantee by it. There is a suggestion that the sale was made at public auction, but inasmuch as C. S., sec. 3515, prohibits *any* sale, this fact does not change the situation.

This leaves for disposal only the contention that appellant could not avail itself of the illegality of this deed as a defense, first, because it was not pleaded affirmatively as a defense, and second, because the defendant, a wilful tres-

passer, cannot question the title of the plaintiff, if the latter had possession under claim of right. Both of these positions are well founded. The rule of pleading is well settled by *Miller v. Donovan*, 11 Ida. 545, 83 Pac. 608. The rule upon estoppel is definitely affirmed in *Hanson v. Seawell*, 35 Ida. 92, 204 Pac. 660, and in *Harker v. Seawell*, 35 Ida. 457, 206 Pac. 812. Were we to decide the case without reference to the public policy involved, the respondent would be entitled to prevail. Public policy is, however, very definitey before the court, and constitutes the foundation upon which our decision rests.

■ ■ The plaintiff introduced the deed from Owyhee county to Dora A. Clark in evidence, to satisfy the burden upon him of proving claim of right to the land in question. This it was necessary for him to do. This deed being absolutely void, it therefore necessarily follows that possession under it is the result of the criminal act of the plaintiff. Recovery of damages for trespass against that possession, confers upon the plaintiff benefits arising out of a claim of right prohibited by statute and the result of his own illegal act. The situation is further aggravated by the particular facts hereinbefore referred to. It is quite true that the defendant cannot raise the question of title, but the illegality of the deed was divulged to the court by the pleadings and the evidence of the plaintiff. The lower court, taking cognizance of the issue, submitted it to the jury in the following language:

"On the other hand, I instruct you that if you find from the evidence that neither the plaintiff, nor his wife, Dora A. Clark, was in actual possession, as hereinbefore defined, of the land described in plaintiff's second cause of action, at the time of the alleged trespass thereon by defendant's sheep, and you further find from the evidence that the land described in said second cause of action was purchased by the wife of plaintiff from the County of Owyhee while the plaintiff was a member of the Board of County Commissioners of said County, and that plaintiff was directly or indirectly interested in said purchase at the time said purchase was made, or that plaintiff procured his wife to

make such purchase upon the understanding, express or implied, that plaintiff should upon such purchase or thereafter acquire or derive, directly or indirectly, any advantage or benefit from said lands so purchased, or any interest therein, then your verdict upon plaintiff's second cause of action should be for the defendant.''

This instruction was improper because the deed, as shown by the pleadings and evidence of plaintiff, was void, and no disputed question of fact was involved. The finding of the jury that the plaintiff was not interested is not binding, since the law imputes interest from the marital relationship.

Whenever and from whatever source there came to the court's attention knowledge that this deed had been issued in violation of the statutes prohibiting public officers from being interested in sales of public property, whether from the pleadings, the evidence or even extraneous sources, it was its duty to promptly satisfy itself as to the facts and dismiss the proceeding *sua sponte*. This without reference to any technical rules of pleading or to the position of the defendant. The rule is based upon a public policy which prohibits a court from enforcing rights based upon a violation of law. The rule is well stated by the then Chief Justice Budge, in the case of *Libby v. Pelham*, 30 Ida. 614, 166 Pac. 575:

'' 'It is a fundamental rule, however, that rights based on the violation of the law will never be enforced by the courts. . . . . If the court is advised that the transaction is illegal because in contravention of a statute making it a criminal offense, it is sufficient to justify a refusal to uphold the transaction in any way.' ''

This case has been followed in *McFall v. Arkoosh*, 37 Ida. 243, 215 Pac. 978. *Miller v. Donovan, supra,* announces the rule that the illegality must appear from the complaint before it can be taken advantage of by defendant under a general denial. The right and duty of a court to act *sua sponte* was not considered in this opinion, and *Libby v. Pelham* announces the policy of the state in this regard.

The supreme court of Washington in *Lewer v. Cornelius,* 72 Wash. 124, 129 Pac. 911, has established the rule in even stronger language:

"And here it may be well to notice another contention of the respondent. It is claimed that the maker of a note is estopped to deny that the payee thereof is the real party in interest. But conceding this to be a general rule, it has no application to the question suggested here. The court listens to this defense not because of any desire to aid the maker of the note—indeed, he is usually as culpable as the payee—but listens to it because of the public policy involved; because the parties in entering into the contract have violated the statute. A court will not knowingly aid in the furtherance of an illegal transaction. And in harmony with this principle it does not concern itself as to the manner in which the illegality of a matter before it is brought to its attention. If such illegality appears in the pleadings of either party, it will not inquire into the technical accuracy of such pleadings; if it appears in the statement of witnesses at the trial, it will not inquire into the technical admissibility of such statement as evidence, but will in either case start an inquiry of its own, and if it be found that the differences which it is called upon to adjudicate arise out of an illegal transaction it will leave the parties where it found them, to work out their differences as best they may."

Even the parties themselves cannot waive the illegality and the question can be raised for the first time in the supreme court, as was held in *Newport Const. Co. v. Porter,* 118 Or. 127, 246 Pac. 211.

"Although this point was not raised in argument in the briefs, we are justified in suggesting it and enforcing it by the doctrine of *Jackson v. Baker,* 48 Or. 155, 85 Pac. 512, where the court, speaking through Mr. Chief Justice Robert S. Bean, laid down the rule thus: 'If the illegality appears from the complaint or the plaintiff's case, the court will, at any stage of the proceedings, dismiss the action, although such illegality is not pleaded as a defense, or insisted upon by the parties, and may have been expressly waived by them.

It is an objection which the court itself is bound to raise in the due administration of justice, regardless of the wishes of the parties.' ''

The rule prevails in California. See *Conte v. Busby*, 115 Cal. App. 732, 2 Pac. (2d) 458, which uses the following language:

''Respondent relies on the rule that, where the defendant does not set up the defense of illegality, 'but that the case made by the plaintiff or the defendant shows its illegality, it becomes the duty of the court *sua sponte* to refuse to entertain the action.' *Dean v. McNerney*, 91 Cal. App. 206, 208, 266 Pac. 975, 976. In the early case of *Valentine v. Stuart*, 15 Cal. 387, 405, the Supreme Court says: 'If, from the plaintiff's own stating or otherwise, the cause of action appears to rise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground that the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.' To the same effect are: *Kreamer v. Earl*, 91 Cal. 112, 117, 27 Pac. 735; *De Leonis v. Walsh*, 140 Cal. 175, 182, 73 Pac. 813; *Domenigoni v. Imperial Live Stock etc. Co.*, 189 Cal. 467, 476, 209 Pac. 36.''

The supreme court of the United States, in *McMullen v. Hoffman*, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. ed. 1117, has said:

''The authorities from the earliest times to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights springing from such contract. In cases of this kind the maxim is *Potior est conditio defendantis*.''

The proposition of law which we announce applies to both actions at law and suits in equity and is universally adhered to. (6 R. C. L. 816, sec. 215.)

The lower court should have dismissed the second cause of action *sua sponte* at the conclusion of the case. It should not have been submitted to the jury at all. It is the duty

of this court so to do now, and it is so ordered. The judgment upon the first cause of action has not been attacked, and it is therefore affirmed.

Since our decision is based entirely upon the public policy of the state, we must leave the parties as we find them. While the question which we found controlling was presented by the appellant, our decision is not based upon any rights accruing to it, but rather upon the keen necessity of preserving inviolate the purity of government. Indeed, it appears that defendant was a wilful trespasser upon lands not its own, and we feel no tenderness toward it in the matter before us. Let each party pay its own costs upon this appeal. From the record it would appear impossible to segregate the costs below. Therefore all costs below shall follow the judgment upon the first cause of action and be awarded to the plaintiff. The judgment is affirmed as to the first cause of action; reversed and dismissed as to the second cause of action. Costs awarded as above directed.

Lee, C. J., and Givens and Varian, JJ., concur.

Budge, J., concurs in conclusion reached.