(Nos. 6885, 6886. March 20, 1941.)

STATE ex rel. CALVIN E. WRIGHT, State Auditor, Respondent, v. CHARLES C. GOSSETT, HARRY C. PARSONS, and UNITED PACIFIC CASUALTY INSURANCE COMPANY, a corporation, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, Appellants.

STATE ex rel. CALVIN E. WRIGHT, State Auditor, Respondent, v. HARRY C. PARSONS and UNITED PACIFIC CASUALTY INSURANCE COMPANY, a corporation, and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, and AUGUSTA SMITH, Administratrix of the estate of Troy D. Smith, Deceased, Appellants.

[113 Pac. (2d) 415.]

ON REHEARING MAY 20, 1941.

George Donart, Dunlap & Dunlap, Francis M. Bistline and Maurice H. Greene, for Appellants.

524

Bert H. Miller, Attorney General, and Robert M. Kerr, Jr., and J. R. Smead, Assistant Attorneys General, for Respondent.

PER CURIAM.—This action involves the provisions of chap. 167, 1937 Sess. Laws, providing as follows:

"That the Speaker of the House of Representatives, ... the Lieutenant Governor as President of the Senate, ... are hereby authorized, directed and empowered to remain in Boise, Idaho, *in their present official capacities,* a sufficient length of time to complete the unfinished business of the Legislature, ... That the rate of pay for such above-named officers ... shall be the same as that which they received during the session of the Legislature." (Emphasis inserted.)

The sum of $4000. for salaries, and $4000. for expenses was appropriated to carry the chapter into effect.

Charles C. Gossett, lieutenant governor, and Troy D. Smith, now deceased, state representative from Custer county, respectively, president of the senate and speaker of the house during the 1937 session of the legislature, remained in Boise after the adjournment of the session and performed such duties and services pursuant to the above act and drew $330. and $315. respectively from the state for compensation therefor. These claims were approved by the State Board of Examiners. The state auditor instituted actions to recover back for the state said respective sums on the ground that payment was illegal. Demurrers in each case were filed and overruled and appellants answered. Motions to strike and demurrers to the answers, filed by respondent, were withdrawn after statement by counsel for appellants that the answers filed did not present any issues of fact but solely questions of law, and motions for judgment on the pleadings were substituted by respondent. The motions for judgment on the pleadings were granted and judgment was entered in favor of respondent and against appellants in each case for the entire amount of the respective claims plus legal interest. Appeals taken from the judgment have been consolidated by stipulation of counsel and approval of the court.

The assignments of error urge in the main that the

court erred in overruling the demurrers to the complaints and in granting the motions for and entering judgments in favor of respondent; upon the ground that chap. 167, 1937 Sess. Laws is not unconstitutional; that the particulars in which the act was unconstitutional were not pointed out; that the board of examiners was vested with absolute power to determine rightly or wrongly the rejection or payment of the claims; and that the state having accepted the benefits under the statute is estopped from questioning its constitutionality.

We see no merit in appellants' proposition that the state is estopped, for the reason that the state of Idaho received no benefit from either the lieutenant governor or speaker of the house of representatives by reason of the services rendered after the session adjourned, excepting those benefits which such officers were already required to render to the state and for which a compensation in entirety was fixed. The statute under consideration, chap. 167, 1937 Sess. Laws, specifically empowered the lieutenant governor as president of the senate and the speaker of the house of representatives to remain in Boise *"in their present official capacities"* as president of the senate and speaker of the house of representatives "a sufficient length of time to complete the unfinished business of the Legislature." Art. 4, sec. 19, of the Constitution provides:

" ... The lieutenant governor shall receive the same per diem as may be provided by law for the speaker of the house of representatives, *to be allowed only during the sessions of the legislature. The compensations enumerated shall be in full for all services by said officers respectively, rendered in any official capacity or employment whatever during their respective terms of office."* (Emphasis inserted.)

Appellants urgently contend they were entitled to receive additional compensation for the benefits the state received by reason of the services they rendered to the state after the session adjourned. Appellants, in view of the foregoing provisions of the constitution, could not and did not render any additional services or benefits to the state for the reason that they had been compensated

for all services rendered in any official capacity. In other words, it was the duty of these officers to do and perform all of their acts as speaker of the house and president of the senate for the compensation fixed by the constitution and any acts subsequently performed and for which they had already received compensation did not amount to additional benefit to the state. The state having received no benefits there is no question of estoppel here. It cannot well be affirmed that the state accepting services under an unconstitutional law, which services it was already entitled to receive, accepts benefits under such law so that it is estopped from questioning its validity. (*Santa Cruz v. McKnight*, (Ariz.) 177 Pac. 256.)

In each case it was alleged that the officer had received compensation in full for his services rendered in connection with his office for the biennium and further it is alleged that the services rendered by the officers after the close of the legislative session and for which compensation was claimed and paid were performed in their official capacity. In the Smith case it was further alleged in the complaint that the provisions of chap. 167, 1937 Sess. Laws, under which the officer allegedly continued to perform services, was unconstitutional and void. The two cases were consolidated for trial and issues joined and the particulars in which the act was alleged to be unconstitutional were fully presented to the court with authorities pro and con and it does not appear that the constitutional question was not duly raised and insisted upon. (16 C. J. S. 96.)

Appellants' proposition that chap. 167, 1937 Sess. Laws, is not unconstitutional is answered in unmistakable terms by the Constitution to the contrary. Art. 3, sec. 23, provides:

"Each member of the legislature shall receive for his services a sum not exceeding five dollars per day from the commencement of the session; but such pay shall not exceed for each member, except the presiding officers, in the aggregate $300. for per diem allowances for any one session; and shall receive each the sum of ten cents per mile each way by the usual traveled route.... The presiding officers of the legislature shall each in virtue of his

office, receive an additional compensation equal to one half his per diem allowance as a member; ... "

And as above related, art. 4, sec. 19, provides the lieutenant governor shall receive the same per diem as may be provided by law for the speaker of the house of representatives *"to be allowed only during the sessions of the Legislature."* To make it more certain and emphatic, if such be possible, this constitutional provision further provides that *"The compensations enumerated shall be in full for all services by said officers respectively, rendered in any official capacity or employment whatever during their respective terms of office."* It is well settled that in construing the Constitution words are to be given their ordinary meaning. The constitutional provisions above referred to are clear and explicit and that portion of chap. 167, 1937 Sess. Laws, relating to further compensation for the speaker of the house and president of the senate for services performed after the adjournment of the session is in direct conflict with the Constitution.

▬ An officer who claims and receives compensation in excess of the amount limited by the Constitution is liable in the amount of such excess in an action brought by the state to recover the illegal payments. (*Anderson v. Lewis,* 6 Ida. 51, 52 Pac. 163; *Nez Perce County v. Dent,* 53 Ida. 787, 27 Pac. (2d) 979; *Ada Co. v. Gess,* 4 Ida. 611, 43 Pac. 71; *County of Ada v. Ryals,* 4 Ida. 365, 39 Pac. 556; *Guheen v. Curtis,* 3 Ida. 443, 31 Pac. 805; *McRoberts v. Hoar,* 28 Ida. 163, 152 Pac. 1046.)

▬ It is asserted that the board of examiners was vested absolutely with the power to determine rightly or wrongly the rejection or payment of these claims. As heretofore pointed out the compensation of the lieutenant governor and speaker of the house of representatives is fixed by the Constitution. Art. 4, sec. 18, provides:

"The governor, secretary of state, and attorney general ... shall also constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law. ... "

The claims exempted from the board's examination are "salaries and compensation of officers fixed by law." (Const., art. 4, sec. 18.)

There is no question of lack of good faith on the part of appellants in carrying out the provisions of the act in question, the sole and only question here being the determination of the constitutionality of the act.

It follows that the judgment should be affirmed and it is so ordered.

Costs awarded to respondent.

ON REHEARING
(May 20, 1941)

PER CURIAM.—Appellants have filed a petition for rehearing, which has been granted; counsel for the parties litigant have made oral arguments and filed briefs on rehearing and we have given the cases further consideration.

Counsel for appellants, in their brief on rehearing, say:

"In a final analysis of this case there is but one point involved and that is whether or not members of a legislature (or any public officer) can draw pay from the state for services performed, which are not germane to his office; this would require the court to determine whether or not the duties prescribed for the Speaker and Lieut. Governor in Chapter 167 of the 1937 Session Laws (omitted portion of that act in present opinion of the court) are germane to the office."

Appellants rely on the rule stated in Mechem On Public Officers, sections 862 and 863, as follows:

"Sec. 862. Can not recover extra Compensation for added or incidental Services.—An officer who accepts an office to which a fixed salary or compensation is attached, is deemed to undertake to perform its duties for the salary or compensation fixed, though it may be inadequate, and if the proper authorities increase its duties by the addition of others germane to the office, the officer must perform them without extra compensation. Neither can he recover extra compensation for incidental or collateral services which properly belong to or form a part of the main office. An express contract to pay such extra compensation or an express allowance of it is void.

"Sec. 863. But may recover for Services in independent Employment.—'But this rule nevertheless,' it has been

said, 'has its limit. It does not follow from the principles laid down that a public officer is bound to perform *all manner of public service* without compensation because his office has a salary annexed to it. Nor is he in consequence of holding an office rendered legally incompetent to the discharge of duties which are clearly extra-official, outside of the scope of his official duty.'

"Where, therefore, a public officer is employed to render services in an independent employment, not germane or incidental to his official duties, as where the mayor of a city, who is also an attorney at law, is, without fraud or collusion, employed by the common council to defend a suit against the city, or a police justice is employed to revise the city ordinances, or a receiver of public moneys is employed to assist in disposing of Indian lands, he may recover for such services."

Appellants' counsel further say in their brief on rehearing:

"Following the above rule in the matter of the cases at bar, it is incumbent upon this court to determine whether or not the duties prescribed in said Chap. 167 are germane to the office of Speaker and President of the Senate in order to render a true decision in these cases. In other words, it is for the court to say whether or not each of the following duties are germane to the office of speaker or Lieut. Governor, to-wit;

"Prepare the legislative journals,

"Index the same,

"Complete the enrolling of bills,

"Indexing all laws, resolutions and memorials enacted during the session,

"Complete any unfinished legislative work of any character;

"Take inventory of Legislative furniture.

"Supervise and employ the clerical help to assist in such work.

"It should require no argument or authorities for the court to know that the actual work of the legislators as such ends with the adoption of the motion to adjourn sine die,—whatever remains to be done after that is purely manual labor.

"The court attempted to avoid passing upon this matter in the opinion as written, so we would surmise, because all of it was omitted and asterisks substituted therefor; but the court is very likely going to be called upon to pass upon this matter in another case even if it still insists on evading doing so in this one, and for the convenience of the court we attach hereto copy of H.B. 262 [362] of the 26th session, which is the clean-up bill of the session just adjourned, and it will be noted that it differently worded in that 'in their official capacities' is omitted and likewise it does not refer to unfinished business of the legislature. The copy of H.B. 262 [362] is marked 'Exhibit A' and hereby made a part of this brief."

Should a case come before this court involving the validity of House Bill No. 362 of the Twenty-sixth Session of the Legislature (1941 Session Laws, chapter 173, page 346), being what counsel refer to as "the clean-up bill of the session just adjourned," we will not attempt to avoid passing on the validity of that act, nor have we attempted, nor do we now attempt to evade deciding any question presented by counsel in these cases, which is necessary to be decided in order to determine the validity of the legislative act here under consideration.

The constitutional provisions, quoted in our original opinion, are decisive of the question of the validity of Idaho Session Laws, 1937, chapter 167, page 272, so far as it relates to compensation paid to the lieutenant governor, as president of the senate, and to the speaker of the house of representatives, in addition to the maximum amounts specified in the constitution which they might receive, from the state, for their services, during their respective terms of office. That is the question presented by the appeals in these cases.

In order that the petition for rehearing may be fully disposed of, we here quote section 1 of chapter 167 in full, without evasion, omission, or asterisk:

"Section 1. That the Speaker of the House of Representatives, the Chief Clerk of the House of Representatives, the Lieutenant Governor as President of the Senate, and the Secretary of the Senate are hereby authorized, directed and empowered to remain in Boise, Idaho, in

their present official capacities, a sufficient length of time to complete the unfinished business of the Legislature in the preparation of the journals, indexing the same, completing the enrolling of bills, indexing all laws, resolutions and memorials enacted or adopted by this session, and to complete any and all legislative work of any character remaining to be done at the close of the Twenty-fourth Legislative session, and to take inventory of Legislative furniture. That the said Speaker of the House and Lieutenant Governor as President of the Senate, be and they are hereby authorized and empowered to retain, appoint and employ so many of the attaches and employees of either House as may be necessary, in their judgment, to finish said work, and incur said other expenses for supplies or materials as may be necessary to complete said work. That the rate of pay for such above-named officers and attaches shall be the same as that which they received during the session of the Legislature."

It is our opinion that the actual work of preparing legislative journals, indexing them, completing the enrolling of bills, indexing all laws, resolutions and memorials enacted during the session and taking inventory of legislative furniture is not germane to the office of speaker of the house of representatives or to the office of lieutenant governor, in his capacity as president of the senate, and that employing clerical help, and supervising the employees of the legislature in the performance of their work is germane to said offices.

The performance, by the presiding officers, of their official duties in completing unfinished legislative work is, of course, germane to said offices. Article III, Section 21 of the Constitution provides: "All bills or joint resolutions passed shall be signed by the presiding officers of the respective houses." The duty of signing bills and joint resolutions which have been passed by the legislature, and which remain unsigned at the time of adjournment, devolves on the speaker of the house of representatives and the lieutenant governor, acting in his capacity as president of the senate. The fact that the legislature designated the speaker and chief clerk of the house and the president and secretary of the senate "in their present

official capacities" to complete the unfinished business of the legislature, and then specified the acts to be done, by these officials and so many of the attaches and employees of either house as might be necessary to finish said work, indicates, very clearly, that it was not the legislative intention that the speaker of the house and president of the senate should perform the manual labor of completing the legislative work, or that they were required, or expected, to do anything not germane to their respective offices.

Appellants insist the portion of Article IV, Section 19 of the Constitution, quoted in our original opinion, does not apply to the speaker of the house of representatives or the lieutenant governor. We here quote the entire section. The sentences appearing in italics are quoted in the original opinion.

"Sec. 19. The governor, secretary of state, state auditor, state treasurer, attorney general and superintendent of public instruction, shall, monthly as due, during their continuance in office, receive for their services compensation, which, for the term next ensuing after the adoption of this constitution, is fixed as follows: Governor, three thousand dollars per annum; secretary of state, one thousand eight hundred dollars per annum; state auditor, one thousand eight hundred dollars per annum; state treasurer, one thousand dollars per annum; attorney general, two thousand dollars per annum; and superintendent of public instruction, one thousand five hundred dollars per annum. *The lieutenant-governor shall receive the same per diem as may be provided by law for the speaker of the house of representatives, to be allowed only during the sessions of the legislature. The compensations enumerated shall be in full for all services by said officers respectively, rendered in any official capacity or employment whatever during their respective terms of office.*

"No officer named in this section shall receive, for the performance of any official duty, any fee for his own use; but all fees fixed by law for the performance by either of them, of any official duty, shall be collected in advance, and deposited with the state treasurer quarterly to the credit of the state. The legislature may by law, diminish

or increase the compensation of any or all of the officers named in this section, but no such diminution or increase, shall effect the salaries of the officers then in office during their term; *Provided, however,* The legislature may provide for the payment of actual and necessary expenses to the governor, lieutenant-governor, secretary of state, attorney general, and superintendent of public instruction, while traveling within the state in the performance of official duty."

 This contention is based on counsels' construction of the word "enumerated," used in the section of the constitution above quoted. They attempt to make that word apply, exclusively, to compensations which are expressed in a specified number of dollars per annum, and to exclude from its application the per diem compensation of lieutenant governor, the amount of which is fixed by reference to the per diem compensation of the speaker of the house of representatives. That construction is entirely too narrow. In Webster's New International Dictionary, Second Edition, (1937) "enumerate" is defined thus: "To count over, or tell off one after another; to number; count; to name over." In Funk & Wagnalls' New Standard Dictionary of the English Language, (1937) it is defined: "To name one by one; specify singly; tell; also, to count or ascertain the number of; as, to *enumerate* items or particulars; *enumerating* the population." In *City and County of San Francisco v. Pennie,* 93 Cal. 465, 469, 29 Pac. 66, 67, it is said:

"The word 'enumerate' is very frequently used with the meaning of 'designate,' or 'specifically mention.' Lexicographers give as definitions of the word, 'to mention in detail,' or 'reckon up singly,' 'to tell,' 'to recount,' 'to relate.' " (See, also, Black's Law Dictionary, Third Edition, page 669.)

"Enumerated," as used in Idaho Constitution, Article IV, Section 19, expresses the same meaning as would have been conveyed had "designated," or "specifically mentioned," been used in its stead. The compensation of lieutenant governor is enumerated in that section. That of speaker of the house of representatives is not. Reference to the speaker's compensation is made therein only

for the purpose of fixing the amount of that of lieutenant governor. The amount of the speaker's compensation is limited by Article III, Section 23 of the Constitution, the applicable part of which appears in our original opinion.

Appellants further contend the constitutional limitation on the compensations enumerated in Article IV, Section 19, has had no force or effect since the term of office next ensuing after the adoption of the constitution. The language is: "The *compensations* enumerated," not the *amounts* thereof. The compensations of governor, secretary of state, state auditor, state treasurer, attorney general, superintendent of public instruction and lieutenant governor are enumerated in Article IV, Section 19, of the Constitution, and: "The compensations enumerated shall be in full for all services by said officers respectively, rendered in any official capacity or employment whatever during their respective terms of office." The compensation of speaker of the house of representatives, as well as that of lieutenant governor, as heretofore and in our original opinion pointed out, is limited by Article III, Section 23, of the Constitution.

On rehearing, appellants have brought to our attention *Russell v. Cone,* 168 Ark. 989, 272 S. W. 678. In that case, a citizen and taxpayer of Arkansas brought suit to enjoin the auditor and treasurer of the state from issuing and paying warrants to certain senators and members of the house of representatives, pursuant to an act of the legislative assembly entitled "An act for the completion of the records of the work of the Forty-Fifth General Assembly," which provided that seventeen members of the senate and seventeen members of the house of representatives should remain on duty as members of the assembly, after adjournment, during a period of time fixed in the act, for the purpose of completing the work of the assembly; that for such services sixteen of the senators and sixteen of the representatives should receive $6.00 each per day and the president of the senate and speaker of the house of representatives, who were members of the committee, should receive $8.00 each per day; also that all said senators and representatives should receive, in

addition to their per diem, $1.00 per day for stamps during the time of their service on the committee.

In the course of the majority opinion, it is stated:

"Without reviewing the testimony heard by the court below, it may be summarized by saying that it was to the effect that only a few of the senators or representatives could or did work at any one time, and that a number of them had done no work at any time, yet all of them had received vouchers entitling them to warrants from the Auditor of State, which would be paid by the Treasurer of the State out of the appropriation made by the General Assembly for that purpose.

"In this connection it may also be said that the act under review provided that, in addition to the senators and representatives who were named in the act, the Secretary of the Senate, with two assistant secretaries, the journal clerk, with two assistants, the bill clerk, the enrolling clerk, and one assistant, and nineteen extra clerical helpers who had been named by the president of the Senate, should likewise be employed, and that a like number of employees on the part of the House were also provided for. A grand total of forty-six persons on the part of the Senate and a like number on the part of the House were thus provided for by the act.

"The testimony shows that only fifteen days were required to enroll the bills for presentation to the Governor, and that a comparatively small number of persons could have performed this service within that time. No injunction was prayed in regard to paying these clerks, and the court made no order in regard to them."

From a decree of dismissal, plaintiff appealed and the supreme court affirmed the decree, two of its five members dissenting.

The majority opinion quotes the following provision of the Arkansas Constitution:

"Each member of the General Assembly shall receive six dollars per day for his services during the first sixty days of any regular session of the General Assembly, and, if any regular session shall be extended, such members shall serve without further per diem. Each member of the General Assembly shall also receive ten cents per mile

for each mile traveled in going to and returning from the seat of government, over the most direct and practicable route. When convened in extraordinary session by the Governor, they shall each receive three dollars per day for their services during the first fifteen days, and, if such extraordinary session shall extend beyond fifteen days, they shall receive no further per diem. They shall be entitled to the same mileage for any extraordinary session as herein provided for regular sessions. The terms of all members of the General Assembly shall begin on the day of their election, and they shall receive no compensation, perquisite or allowance whatever, except as herein provided."

We have great respect for the ability of the Supreme Court of Arkansas and have studied its decision of *Russell v. Cone,* with care. It is not our intention to criticize that decision, but we are unable to reconcile it with the last sentence of the constitutional provision, above quoted, to-wit:

"The terms of all members of the General Assembly shall begin on the day of their election, and they shall receive no compensation, perquisite or allowance whatever, except as herein provided."

It does not seem to us to point the way to a proper performance of our duty in the cases before us, and we must, very respectfully, decline to follow it.

The portions of Article III, Section 23, and Article IV, Section 19, of our Constitution, quoted in our original decision, and on which it is based, were written for the protection of the state treasury, and the framers of that document could not have selected better language with which to express that intention. The decision heretofore announced is adhered to.